

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann

~~XXXXXXXXXXXXXXXX~~
~~WILLIAM WILSON~~XX
**ATTORNEY GENERAL**

AUSTIN 11, TEXAS

Honorable T. M. Trimble
First Assistant
State Superintendent of
    Public Instruction
Austin, Texas

Dear Sir:

Opinion No. O-2838
Re: Group Insurance for teachers
in independent school districts
and payment of premiums out of
school funds.

In your letter of October 17, 1940, you request our opinion in response to the following questions:

> "May the Board of Trustees of the Fort Worth Independent School District use local maintenance funds to pay the employer's part on a group life insurance premium for the Fort Worth teachers?

> "Could the Board of Trustees of an independent school district make provision for the payment of the employer's part of the premium of group life insurance of its teachers, if provision is made in the teachers' contracts whereby this premium payment is a part of the teachers' annual salaries?"

We are unable to find any statute which would authorize the trustees of the Fort Worth Independent School District to contract for or expend local maintenance funds to pay the employer's part of a group life insurance premium for the district's teachers. In the absence of such a statute, such funds may not be so expended.

This question is in all material respects the same as that considered by this department in our Opinion No. O-2469, copy of which is attached hereto, and it was there held that public school funds could not be used to pay for group insurance.

Your second question is answered in the negative for several reasons.

(1) Section 1 of Article 4764a provides:

> "Group Life Insurance is hereby declared to be
> that form of life insurance covering not less than
> twenty-five employees written under a policy issued
> to the employer, the premium for which is to be paid
> by the employer or by the employer and employee joint-
> ly and insuring all of his employees, or all of any
> class or classes thereof determined by conditions
> pertaining to the employment, for amounts of insurance
> based upon some plan which will preclude individual
> selection, and for the benefit of persons other than
> the employer; . . ."

It will be observed that group insurance cannot under this statute be had
unless the school district pays its part of the premium.

If your second question is predicated upon the idea of paying
the teachers a salary, and then requiring them to pay the school districts'
portion of the premium for the insurance, such procedure would not bring
the insurance under the above definition of group insurance for the reason
that the teachers would, in fact, be paying all of the premium; while the
above statute requires the school district to pay a part of the same.

(2)  If you intend by your second question to provide in the
teachers' contracts to pay them so much money for salaries, provided a
certain amount of same should be used to pay the school district's part of
the premium on group insurance, the plan would amount to nothing more than
an evasion of our ruling to the first question submitted: for the reason
that you would still be doing indirectly what you cannot do directly.
This principle is sustained by the Court of Civil Appeals at San Antonio
in the case of Dodson vs. Jones, 190 S.W. 253:

> "Appellant was the principal of school No. 1,
> district No. 2, and was being paid the sum of $75
> out of the free school money of the state. About
> the same time of his employment as principal, he was
> also employed by the trustees as janitor with a sal-
> ary of $50 a month. Vouchers were issued to appellant
> for his services as janitor, and the county superin-
> tendent, N. S. Jones, approved two of them before he
> went out of office. He was succeeded by Miss Eva
> Strickland, and she refused to approve the seven remain-
> ing vouchers. The matter was appealed to the county
> board of education, then to the state superintendent,
> and finally to the state board of education; the last
> two mentioned sustaining the county superintendent.
> No special tax was levied by schools 1 and 2, with which
> appellant was connected, but were run on state money
> alone. Appellant performed services both as principal
> and janitor for nine months, the time for which he was
> employed by the trustees. Miss Strickland resigned

and was succeeded by appellee. The vouchers were not presented to her for approval.

"The court found that the contract with appellant for his services as janitor was made to evade the terms of article 2780 and article 2781, Revised Statutes, which provide, among other things, that a teacher holding a first-grade certificate shall in no event receive more than $75 a month from the public free school fund. The court also found that a man named Tristan Maldanado was also employed as janitor in the same school in which appellant was employed as principal and janitor. The law could not be evaded in that way, and the vouchers granted by complacent trustees were properly rejected by the county superintendent. It is a preposterous proposition that a country school, or two country schools, would require the services of two janitors. We are cf the opinion that it was never intended that the principal of a school should be paid two salaries out of the public free school money.

"The first section of article 2772, Rev. Stats., which is cited by appellant, provides that the state and county available school funds shall be used exclusively for the payment of salaries of teachers and superintendents and fees for taking the scholastic census, and we fail to see what aid and comfort that gives a man who is endeavoring to obtain a part of the school fund for services as a janitor, when he has drawn for the same time pay as principal of the school. It is true that in the second section of the article cited it is provided that a surplus of such state fund may be used to pay janitors and for other enumerated purpopes, but not to increase the pay of teachers. The other articles and decisions cited do not sustain the contention of appellant.

"The judgment is affirmed."

In the case cited, the school trustees could not lawfully pay more than $75.00 to the teacher as salary, and the trustees undertook to give him additional money as janitor. The court held that it could not be done.

In your situation you cannot legally pay for group insurance with your school funds, and in our opinion you would be doing the same thing by providing in the contracts with the teachers that they be required to pay the district's part of the premium of the group insurance.

(3) If the trustees should provide in their contracts with the teachers that they must use a certain part of their salary to pay for premiums on insurance, it would seem that the amount of the so-called salary which was to be used for the payment of such premiums would still be public money and, therefore, not available for the purchase of insurance.

The Supreme Court of Minnesota, in the case of State ex rel, Jennison vs. Rogers, reported in L.R.A. 58, page 663, involving a contract between trustees and teachers whereby a certain amount of the teachers' salaries was retained for the purpose of creating a teachers' retirement fund, it was held that the money so retained was still public money, and could not be so used:

> "The authority of the board is also questioned upon the ground that the money retained is in fact public money, and not the private funds of the teachers. It does not seem very material whether the money so assigned be considered public or private funds -- the result must be the same. But it is interesting to notice what the practical effect is of carrying out the plan outlined in the petition. If the entire salary had been paid to relator, and he had then voluntarily relinquished or paid back 1 per cent thereof for the purposes expressed, it would clearly be private money; but 1 per cent never had been paid in fact, and it never was contemplated that it should be. When the relator entered into the contract he surrendered avsolute control over that portion of his salary, and, in effect, entered into a contract with the board that his salary would be 99 per cent of the amount nominally stated. So from this view of the case it appears to us that the money retained never left the treasury, but remained public money, and the board of education had no authority to divert it from the uses mentioned in the statute."

This same case also holds that a contract between trustees and teachers, whereby the teachers are required to pay a certain amount of their salaries into a teachers' retirement fund could not be sustained on the ground that such plan would be in the interest of the schools, and the contract was declared to be ultra vires and void.

If a contract creating a teachers retirement fund could not be sustained, then, in our opinion, school trustees, in the absence of some statute authorizing the same, would not have the power to require in teachers' contracts that they carry insurance of any kind.

Until the Legislature has authorized the expenditure of school funds for the purchase of group life insurance, you are advised that it is our opinion that such funds cannot be so used.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

/s/ Grover Sellers

Grover Sellers
First Assistant

GS:FG:egw

Enclosure

APPROVED DEC 18, 1940
/s/ GERALD C. MANN
ATTORNEY GENERAL OF TEXAS

THIS OPINION CONSIDERED
AND APPROVED IN LIMITED
CONFERENCE

APPROVED
Opinion Committee
By BWB
Chairman